**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA

      vs.

LIPING XIAO,

                           Defendant.

8:26-cr-77
(ECC)

---

Kevin Cheung, Asst. U.S. Attorney, *for the Government*
Timothy E. Austin, Asst. Fed. Public Defender, *for the Defendant*

**Hon. Elizabeth C. Coombe, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

Defendant Liping Xiao is charged by complaint with entry without inspection, in violation of 8 U.S.C. § 1325(a). Case No. 8:26-po-21, Dkt. No. 1. According to the affidavit in support of the complaint, Defendant is a Chinese citizen with no legal status in the United States, and she entered the United States on March 3, 2026 by crossing the border with Canada through the woods. *Id.* at ¶¶ 3-4.

At Defendant's initial appearance, the Government moved for detention. Case No. 8:26-po-21, Transcript of Initial Appearance (Tr.) at 7, Dkt. No. 12. The Magistrate Judge denied the motion, finding that the Government had not shown by a preponderance of the evidence that Defendant is a serious risk of flight. Tr. at 14-15. The Magistrate Judge ordered that Defendant be released, and, in response to the Government's request, the Magistrate Judge stayed the release order until 5:00 p.m. that day. Case No. 8:26-po-21, March 6, 2026 Text Order (release order). Before the stay expired, the Government filed a motion to appeal the release order and asked for a

stay until a decision is issued on the appeal.  Dkt. Nos. 1, 3.  The Court granted the stay, Dkt. No. 4, and set a briefing schedule after receiving input from the parties during a status conference, March 9, 2026 Text Order.  The appeal is fully briefed, Dkt. Nos. 8-10.  As explained below, after weighing all of the facts to make an individualized determination, the Court concludes that the Government has established by a preponderance of the evidence that this case involves a serious risk of flight pursuant to 18 U.S.C. § 3142(f)(2)(A), and the case is remanded to the Magistrate Judge to hold a detention hearing.

## I.    BACKGROUND

During the initial appearance, the Government moved for a detention hearing relying on the serious-risk-of-flight provision in § 3142(f)(2)(A).  Tr. at 7.  The Government argued that Defendant, a Chinese citizen, admitted that she entered the United States illegally on March 3, 2026, and that Border Patrol agents watched her walk out of the woods.  *Id.* at 7-8.

Defendant responded that the Government did not offer any information that Defendant has a history of flight or an intention to flee, that Defendants without legal status and ties to the United States "are more than capable of appearing in court," and trying to avoid detection is not evidence of risk of flight because that factor is inherent in almost every criminal offense.  *Id.* at 8-9.  Defendant also argued that "the government's argument amounts to a claim that [8 U.S.C. §] 1325 presents a presumption of serious risk of flight" and such a presumption has no legal support.  *Id.* at 9.

The Government responded that Defendant "could remain here, stand trial, and face the likelihood that [she is] going to be convicted sentenced to prison and then deported," "leave, return to [her] home country immediately, and avoid prosecution," or "remain in [this district] or anywhere in the United States, but avoid detection by authorities and thereby avoid both

prosecution and deportation." *Id.* at 10.  The Government took the position that the first option "is the least likely option that a defendant would follow. . . ." *Id.*

## II.    STANDARD OF REVIEW

"The Bail Reform Act limits the circumstances under which a district court may order pretrial detention." *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988) (citation omitted). When the government moves for detention, the Bail Reform Act requires a two-step process. *Id.* at 49.  First, the court must decide whether the government has established by a preponderance of the evidence that the defendant is charged with one of the offenses enumerated in § 3142(f)(1) or that there is a "serious risk" that the defendant "will flee," or "obstruct justice or intimidate a prospective witness or juror." *Id.* (citing *United States v. Jackson*, 823 F.2d 4, 5 (2d Cir. 1987)); 18 U.S.C. § 3142(f).

If this threshold standard is satisfied, then the court holds a detention hearing to decide whether "any condition or combination of conditions" of release will reasonably assure the appearance of the defendant and the safety of the community by applying four factors: "the nature and circumstances of the offense charged," "the weight of the evidence," "the history and characteristics of the person," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C § 3142(e), (g).

"Detention decisions . . . are 'individualized determination[s]' and should include 'a fact-intensive analysis of the quality and quantity of the evidence produced." *United States v. Morales-Lopez*, No. 5:25-cr-94 (BKS), Dkt. No. 42 at 6 (N.D.N.Y. May 5, 2025) (quoting *United States v. Ciccone*, 312 F. 3d 535, 542-43 (2d Cir. 2002) (additional citation and quotation omitted)).  When deciding whether a defendant is a "serious risk of flight" under § 3142(f)(2)(A), some courts consider the factors articulated in § 3142(g). *See United States v. Perez-Vasquez*, 779 F. Supp. 3d

248, 256-57 (N.D.N.Y. Apr. 22, 2025) (collecting cases). "Other courts (particularly those in immigration cases) employ a more nuanced approach" considering factors including supervised release violations, multiple unlawful entries into the United States, any failure to appear in state court, "use and possession of fraudulent identity documents, and the severity of the potential punishment and the weight of the evidence against [the defendant].'" *Id.* (quoting *United States v. Figueroa-Alvarez*, 681 F. Supp. 3d. 1131, 1140 (D. Idaho 2023) (cleaned up)). Additional factors include "incentives to flee, ability to flee, ties to the jurisdiction and the United States, and the reliability and trustworthiness of the defendant." *Morales-Lopez*, Dkt. No. 42 at 8 (quoting *Figueroa-Alvarez*, 681 F. Supp. 3d. at 1140 (citing Lauryn P. Gouldin, *Defining Flight Risk*, 85 U. Chi. L. Rev. 677, 703-04 (2018)).

If a magistrate judge orders that the defendant be released, the government may file "a motion for revocation of the order or amendment of the conditions of release," and the motion must be decided "promptly." 18 U.S.C. § 3145(a). A district court reviews a magistrate judge's detention decisions *de novo*. *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985). "[A] district court should fully reconsider a magistrate's denial of bail and in ruling on a motion for revocation or amendment of a detention order should not simply defer to the judgment of the magistrate, but reach its own independent conclusion." *Id.* at 80. A district court "may rely on the record developed before the magistrate judge and may also accept additional evidence." *United States v. Dai,* No. 3:23-cr-478 (BKS), 2023 WL 11016392, at *1 (N.D.N.Y. Dec. 19, 2023) (citing *United States v. Colombo*, 777 F.2d 96, 98 n.1 (2d Cir. 1985)).

## III.   DISCUSSION

The Government argues that the release order should be revoked because the Magistrate Judge "ignored" that the Government's burden in a detention hearing is "very low," and that the

Magistrate Judge "incorrectly believed that the [G]overnment could not rely on the crime charged and the penalties faced by the defendant."  Government Motion to Revoke the Release Order (Motion) at 9-10, Dkt. No. 8.[1]   In addition, the Government expresses concern that the standard applied by the Magistrate Judge would make it "virtually impossible for the government to obtain its day in court."  *Id.* at 10.

Defendant responds that "the government presented no evidence beyond the nature of the alleged offense and the possible consequences [Defendant] faces if convicted," and that "a finding of a serious risk that [Defendant] will flee upon these factors would amount to a presumption of flight" not reflected in the Bail Reform Act.  Response in Opposition (Resp.) at 6-7, Dkt. No. 9.

As an initial matter, the Government does not rely solely on the nature of the offense and the potential sentence.   Instead, the Government argues that Defendant is an "alien[] who entered the country illegally, [has] no ties or connections to the United States or the Northern District of New York, [has] a motivation to flee due to the strength of the government's case . . . [and] the nature of [the charge], and the high likelihood of deportation."   Motion at 9-10.

Moreover, to the extent that Defendant suggests that neither the nature of the offense nor her unlawful status is relevant to her risk of flight, that is not correct.  In *Friedman,* the Second Circuit held that the district court's finding regarding "Friedman's risk of flight was clearly erroneous."  837 F.2d at 50.  Friedman faced a lengthy sentence as well as "obloquy" in his community because of child exploitation charges, but, as the Second Circuit pointed out, he was also a "lifelong New York resident" with no passport, "known ability to flee," or prior criminal record.  *Friedman*, 837 F.2d at 49.  The Second Circuit observed that in "other cases concerning risk of flight, we have required more than evidence of the commission of a serious crime and fact

---

[1] Citations are to the page numbers generated by the CM/ECF system.

of a potentially long sentence to support a finding of risk of flight." *Id.* at 50.  It then summarized two cases involving risk-of-flight analysis at the detention stage, not at the § 3142(f)(2)(A) stage. *Id.*

Nothing in *Friedman* instructs courts to ignore evidence that is relevant to whether a defendant is a risk of flight when that evidence establishes an element of the charged offense.  This is not surprising because Friedman was charged with child exploitation offenses, and the elements of those crimes are not inherently probative on the issue of risk of flight.  As a result, the Second Circuit did not consider, let alone articulate, a rule prohibiting courts from considering evidence establishing an element of the offense when deciding whether a defendant is a serious risk of flight under § 3142(f)(2)(A).  *See Perez-Vasquez*, 779 F. Supp. 3d at 262 ("Indeed, it is difficult to imagine how a court could properly evaluate the defendant's incentive to flee based on the severity of potential punishment faced without acknowledging, as a starting point, the underlying offense charged.") (citations omitted); *Morales-Lopez*, Dkt. No. 42 at 6 (N.D.N.Y. May 5, 2025) (explaining that the "starting point" is the "underlying offense charged") (citing *Perez-Vasquez*, 779 F. Supp. 3d at 262).

Defendant also argues that the word "serious" in "serious risk of flight" has been "consistently defined by courts as constituting 'a great risk—beyond average.'"[2]  Resp. at 4.  However, as detailed by another court in this District, the definition of "serious risk of flight" has varied.  *See Perez-Vasquez*, 779 F. Supp. 3d at 253-54, 261-62 (collecting cases).  Defendant does not offer any reason why the plain and ordinary meaning of "serious," a commonly used word,

---

[2] The magistrate judge who wrote this definition recognized that serious "has a plain meaning." *See United States v. Figueroa-Alvarez*, 681 F. Supp. 3d. 1131, 1138 (D. Idaho 2023) (citing *Black's Law Dictionary* in defining "serious" as "important, weighty, momentous, grave, great") (additional citation omitted).

should not apply.  *See Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 546 (2d Cir. 2024) ("When interpreting a statutory provision, we start with the text.  Because the [statute] does not define the [relevant] phrase . . . we presume that its plain meaning applies.") (citations omitted).  Consistent with another court in this District, this Court declines to adopt a definition of "serious" other than its plain and ordinary meaning.  *Perez-Vasquez*, 118 F.4th at  262.  The standard is therefore whether the Government has established by a preponderance of the evidence that this case involves a serious risk that the Defendant will flee.  18 U.S.C. § 3142(f)(2)(A).

Applying the law to the facts of this case to reach an individualized determination, Defendant's unlawful status in the United States and her Chinese citizenship are facts indicating a risk of flight.  In addition, the circumstances surrounding the Defendant's entry into the United States also indicate a risk of flight.  According to the Complaint, on March 3, 2026, at approximately 3:30 p.m., a Border Patrol Agent watched Defendant "walking out of the woods and crossing the border from Canada into the United States."  Dkt. No. 1 at ¶ 3.  As a result, Defendant's entry was recent, and involved walking across the Canadian border without reporting for inspection.  Furthermore, the evidence against Defendant is very strong.  Finally, there are no facts indicating that she has any ties to this district or the United States.

On the other hand, Defendant is correct that she is charged with a petty offense where the maximum potential penalty is six months and that defendants charged with this offense often receive sentences of time served.  Nevertheless, in addition to any sentence of imprisonment, if convicted, defendant faces potential adverse effects on her immigration status, including further detention after any sentence is completed, removal or deportation from the United States, denial of citizenship, and denial of admission to the United States in the future.

Defendant also points out that there is no evidence that she has any criminal history or failure to appear.  This is true, but not at all surprising or particularly helpful given that she was arrested as soon as she entered the United States, and there is no evidence that she has been here previously.

Finally, Defendant relies on *United States v. Martinez-Cermeno,* No. 25 cr 51, 2025 WL 327832, at *2-3 (N.D. Ill. Jan. 29, 2025) and *United States v. Mejias-Mejias,* 771 F.Supp. 3d 688 (D. Md. 2025), but neither case is binding, and both are distinguishable.  First, unlike the Defendant in this case who was apparently arrested when she entered the United States for the first time, the defendants in those cases had ties to their communities.  *See Martinez-Cermeno,* 2025 WL 327832, at *2-3 (explaining that the defendant had "some community ties, namely that he has been living with his girlfriend, an elementary school teacher, in suburban Schaumburg, where he lives with her and her parents"); *Mejias-Mejias*, 771 F. Supp. 3d at 693 (defendant lived in Baltimore "almost the entire time since" he entered the United States 18 months earlier).  In addition, unlike the Defendant in this case, the *Martinez-Cermeno* defendant also had an "appointment for processing of his asylum application" and "temporary protected status."  2025 WL 327832, at *2-3.

After carefully weighing all of these facts to make an individualized determination, the Court concludes that the Government has proven by a preponderance of the evidence that Defendant is a serious risk of flight under § 3142(f)(2)(A) because of her unlawful status in the United States, the weight of the evidence against her including evidence that she entered the United States for the first time on March 3, 2026 by crossing the border through the woods, the potential punishment she faces if she is convicted, including removal or deportation from the United States,

and her lack of ties to this district and the United States.[3]  The release order is therefore reversed, and the case is remanded for a full detention hearing.[4]

## IV.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that the Government's appeal of the Magistrate Judge's release order, Dkt. No. 1, is **GRANTED,** and it is further

**ORDERED** that the Government's motion to revoke the Magistrate Judge's release order, Dkt. No. 8, is **GRANTED** and the release order is **REVOKED**; and it is further

**ORDERED** that the matter is remanded to the Magistrate Judge to hold a detention hearing and any other necessary pretrial proceedings.

**IT IS SO ORDERED.**

Dated: April 10, 2026

_____
Elizabeth C. Coombe
U.S. District Judge

---

[3] Even if the definition of "serious" is "a great risk—beyond average," the facts support a finding that the Government met that standard here.

[4] The Government's request that this Court hold the detention hearing is denied.